STATE OF NORTH CAROLINA    IN THE GENERAL COURT OF JUSTICE
                          SUPERIOR COURT DIVISION
COUNTY OF CABARRUS 2021 FEB 15 P 2: 20    CASE NO.: _____

CABARRUS COUNTY C.S.C.

| | |
|---|---|
| JACQUELINE HONERKAMP, | |
| Plaintiff, | |
| v. | COMPLAINT |
| | (Jury Trial Demanded) |
| ATRIUM HEALTH, INC, a North Carolina nonprofit corporation; NORTHEAST ANESTHESIA AND PAIN SPECIALISTS, P.A., a North Carolina professional association, and DR. JUSTIN FARMER, in his individual capacity, | |
| Defendants. | |

**NOW COMES** Plaintiff, Jacqueline Honerkamp, by and through counsel, and files this Complaint stating the following:

## INTRODUCTION

This action is brought to remedy harassment and discrimination against the Plaintiff in the terms, conditions, and privileges of employment, and to recover damages suffered by Plaintiff as a result of harassment at work because of her gender. Plaintiff's Complaint is brought under Title VII of the Civil Rights Act of 1964 and under the Civil Rights Act of 1991, as now set forth in 42 U.S.C. §2000e, et seq. and 42 U.S.C. §1981A(b). This action includes pendent North Carolina state law claims for Assault and Battery, Negligent Retention and Supervision, Intentional Infliction of Emotional Distress, and Negligent Infliction of Emotional Distress. Plaintiff seeks monetary relief, compensatory damages, and punitive damages pursuant to 42 U.S.C. §2000e(g), 42 U.S.C. §1981A(b) and the law of North Carolina.

Page | 1

## JURISDICTION AND VENUE

1.     Plaintiff timely filed a Charge of Discrimination against Atrium with the Equal Employment Opportunity Commission ("EEOC") on May 26, 2020, complaining of sexual harassment. **(Exhibit A)**

2.     On or about November 16, 2020, the EEOC issued Plaintiff a Notice of Right to Sue. **(Exhibit B)**

3.     Plaintiff commences this action within ninety (90) days of her receipt of a Notice of Right to Sue.

4.     Plaintiff has complied fully with all prerequisites to jurisdiction in this court under Title VII.

5.     Venue for this cause is properly laid in this Court pursuant to and in accordance with, among others, N.C. Gen. Stat. § 1-82.

6.     Defendants are subject to personal jurisdiction of this court pursuant to and by virtue of N.C. Gen. Stat. § 1-75.4.

7.     Subject matter jurisdiction over this cause is conferred upon and vested in this Court pursuant to and by virtue of, among others, N.C. Gen. Stat. § 7A-240 and N.C. gen. Stat. § 7A-243.

## PARTIES

8.     Plaintiff Jacqueline Honerkamp (hereinafter, "Mrs. Honerkamp") is a female citizen and resident of Cabarrus County, North Carolina.

9.     Defendant Atrium Health, Inc. (hereinafter, "Atrium") is a North Carolina nonprofit corporation with its registered office located at 1111 Metropolitan Avenue, Suite 600, Charlotte, North Carolina 28232-2861 and is a "Health Care Provider" as that term is defined by

N.C. Gen. Stat. §90-21.11.

10. Atrium was previously known as Charlotte-Mecklenburg Hospital Authority.

11. Atrium has employed more than 500 employees for each working day in each of the 20 or more calendar weeks in the current or preceding calendar year.

12. Atrium is engaged in an industry affecting commerce, as defined in §701 of Title VII, 42 U.S.C. §2000e.

13. Defendant Northeast Anesthesiology and Pain Specialists, P.A. (hereinafter, "NAPS") is a North Carolina professional association with its registered and principal office located at 920 Church Street North, Concord, North Carolina 28025 and is a "Health Care Provider" as that term is defined by N.C. Gen. Stat. §90-21.11. NAPS is contracted by Atrium to provide physicians for medical services at Atrium.

14. At all times relevant to this Complaint, Dr. Farmer was acting as a medical provider of NAPs; was acting as an employee, agent, or apparent agent of NAPS; and was acting within the course and scope of his employment. Consequently, NAPS is responsible for the negligent acts of Dr. Farmer as its agent, apparent agent and employee, under the doctrine of *respondeat superior*.

15. Upon information and belief, Defendant Dr. Justin Farmer (hereinafter, "Dr. Farmer") is and was at all relevant times, a licensed medical doctor. Upon information and belief, Dr. Farmer is a male citizen and resident of Cabarrus County, North Carolina.

16. At all times relevant to this Complaint, Dr. Farmer was acting as a medical provider of Atrium; was acting as an employee, agent, or apparent agent of Atrium; and was acting within the course and scope of his employment. Consequently, Atrium is responsible for the negligent acts of Dr. Farmer as its agent, apparent agent and employee, under the doctrine of *respondeat superior*.

Page | 3

17.     Defendants, Atrium and NAPS, are vicariously liable for the actions of their agents, servants, and/or employees under the doctrine of *respondeat superior* for any negligent acts and/or omissions committed by them.

18.     Upon information and belief, at all times relevant to this action, Atrium and NAPS, through their agents, servants, and employees, were or should have been aware and informed of Dr. Farmer's sexual harassment.

## STATEMENT OF FACTS

19.     The allegations contained in the preceding paragraphs above are realleged and incorporated herein by reference.

20.     Mrs. Honerkamp graduated from West Stanly High School in May, 2005. As a senior in high school, Mrs. Honerkamp also studied for and received her Certified Nursing Assistant license from Allied Health and Science. Mrs. Honerkamp went on to study nursing at Rowan Cabarrus Community College and North Carolina Research Center in Kannapolis from 2011 to 2015.

21.     In 2006, Mrs. Honerkamp was hired by Atrium as a Post-Anesthesia Care Unit ("PACU") Certified Nursing Assistant ("CNA").

22.     Mrs. Honerkamp obtained her nursing degree and transitioned from her position as a CNA to the position of Registered Nurse ("RN") in the PACU in July, 2015. Mrs. Honerkamp has worked in the PACU department of Atrium for over 14 years.

23.     Not a party to this action, Plaintiff's husband, Mr. Honerkamp, was hired by Atrium in 2004 as a Certified Registered Nurse Anesthetist ("CRNA").

24.     On or about 2014, Dr. Farmer became an agent, servant, or employee of Atrium through NAPS and began providing anesthesiology services.

Page | 4

25.     At all times relevant to this Complaint, Dr. Farmer performed daily and weekly duties with both Mr. Honerkamp and Mrs. Honerkamp and was fully aware that they are happily married as husband and wife.

26.     At all times relevant to this action, Dr. Farmer was married to Dr. Kaci Farmer (hereinafter "Farmer's Wife").

27.     Not a party to this action, Farmer's Wife is an Obstetrician-Gynecologist affiliated with Atrium.

28.     Upon information and belief, Dr. Farmer has a reputation and history of inappropriate relationships and offensive conduct involving the nursing staff at Atrium.

29.     Upon information and belief, Dr. Farmer's multiple affairs with females employed by Atrium has led to at least one PACU nursing staff member's termination.

30.     The termination of the nurse, with no obvious disciplinary actions against Dr. Farmer, put the staff in the position of fearing for their jobs if they reported Dr. Farmer's offensive behavior.

31.     Upon information and belief, Farmer's wife made visits to the PACU to confront nurses about alleged affairs with Dr. Farmer.

32.     Upon information and belief, due to Dr. Farmer's sexual predation of females, he and his spouse have separated, pending a divorce.

33.     Both Atrium and NAPS are aware of Dr. Farmer's sexual predation of females.

34.     Despite Dr. Farmer's working relationship with Mr. Honerkamp, Dr. Farmer began to make unwelcome sexual advances toward Mrs. Honerkamp.

35.     All of Dr. Farmer's sexual advances toward Mrs. Honerkamp were without her consent and were rejected by Mrs. Honerkamp.

Page | 5

36.     Mrs. Honerkamp made it clear to Dr. Farmer that she wanted him to leave her alone and that she considered his actions toward her inappropriate.

37.     On or about July 2019, Dr. Farmer targeted his offensive conduct toward Mrs. Honerkamp by touching and rubbing her back, and attempting to massage her shoulders, placing his hands on both sides of her neck while she was standing at the time-clock.

38.     Mrs. Honerkamp immediately and sternly said, "Do not ever touch me again," letting Dr. Farmer know his conduct was offensive and unwelcome.

39.     Dr. William Goglin, the Chief Anesthesiologist and Chief Executive Officer of NAPS was nearby and witnessed Dr. Farmer's inappropriate behavior.

40.     After several incidents of harassment by Dr. Farmer, Mrs. Honerkamp took her complaints directly to Dr. Goglin since he is a senior member of NAPS and in a superior position to Dr. Farmer.

41.     Upon information and belief, there were no corrective or disciplinary actions taken against Dr. Farmer by Dr. Goglin or NAPS.

42.     On or about August 2019, as Dr. Farmer passed Mrs. Honerkamp in the hallway at Atrium, Dr. Farmer forcefully jerked Mrs. Honerkamp's pony-tail with such force to cause her head to snap backwards causing her to suffer pain in her neck for several days thereafter. This assault was witnessed by another nurse within the PACU.

43.     Mrs. Honerkamp, once again, sternly informed Dr. Farmer that his conduct was offensive and unwelcome, and she demanded he not touch her again.

44.     Upon information and belief, Dr. Farmer's fascination and pulling of Mrs. Honerkamp's pony-tail is a symbolic act representing a certain sexual position.

45.     After these two incidents, and many sexual-innuendo comments by Dr. Farmer to

Mrs. Honerkamp, Mrs. Honerkamp began to struggle emotionally.

46.     Mrs. Honerkamp feared a simple walk down the hall at Atrium.

47.     Mrs. Honerkamp, attempting to protect her husband, withheld Dr. Farmer's acts from her husband fearing their work environment would become untenable since Dr. Farmer regularly worked along-side or in conjunction with Mr. Honerkamp.

48.     Based upon Atrium's failure to address Dr. Farmer's previous offensive conduct toward the nurses, Mrs. Honerkamp feared that reporting Dr. Farmer would continue to fall on deaf ears and jeopardize her employment with Atrium.

49.     Mrs. Honerkamp became so emotionally traumatized that even preparing to go to work generated extremely high anxiety.

50.     On or about September 2019, Dr. Farmer purposefully cornered Mrs. Honerkamp in the Atrium staff breakroom and asked her, "Why won't you let me hug or touch you?"

51.      Again, Mrs. Honerkamp immediately and sternly reminded Dr. Farmer that his conduct is offensive and unwelcome and that he is not to touch her or speak to her and that she is a happily-married woman.

52.     On or about September 2019, despite Mrs. Honerkamp's repeated warnings, Dr. Farmer once again forcefully jerked and snapped Mrs. Honerkamp's head back by yanking her pony-tail, as witnessed by Dr. Ho and Rhonda Griffin, a co-worker within the PACU.

53.     Dr. Ho is an anesthesiologist and the senior-most partner of NAPS.

54.     Following the incident, Mrs. Honerkamp asked Dr. Ho not to mention what he witnessed to her husband due to concerns that Mr. Honerkamp's reaction would add additional stress and tension to the situation.

55.     From September through November 2019, Dr. Farmer repeatedly made offensive

Page | 7

comments to Mrs. Honerkamp about touching her.

56.     On or about November 2019, Dr. Farmer confronted Mrs. Honerkamp in the Pre-Op/PACU hallway and asked Mrs. Honerkamp, "How am I supposed to pull your pony-tail if your hair is down?"

57.     After this incident, Dr. Farmer refused to honor Mrs. Honerkamp's plea to be left alone and continued to regularly make sexual comments to Mrs. Honerkamp.

58.     After months of Dr. Farmer's offensive conduct, Mrs. Honerkamp developed extreme levels of daily stress and anxiety fearing being touched, intimidated, sexually harassed, or being subjected to his offensive comments.

59.     Mrs. Honerkamp sought counsel from co-workers and friends, Rhonda Griffin and Amanda Keen ("Ms. Keen").

60.     After multiple conversations about Dr. Farmer's harassment of Mrs. Honerkamp, Ms. Keen confided in Mrs. Honerkamp that Dr. Farmer had also harassed her with the same offensive conduct.

61.     Mrs. Honerkamp also sought counsel from Dr. Shin Kwak ("Dr. Kwak").

62.     Dr. Kwak is an anesthesiologist and partner at NAPS.

63.     Dr. Kwak admitted that Dr. Farmer had personally violated her as well with his offensive conduct.

64.     In fact, on or about February 2020, Dr. Kwak's spouse, Dr. Ravenbach, whom also is a medical doctor at Atrium, had to be separated from a physical confrontation with Dr. Farmer in the surgeon's lounge at Atrium.

65.     Dr. Farmer became enraged when Dr. Ravenbach confronted him about the aggressive behavior and offensive comments toward his wife, Dr. Kwak, and to that end, resulted

Page | 8

in the physical altercation.

66.     Dr. Ravenbach, aware of and a previous witness to Dr. Farmer's offensive conduct toward Mrs. Honerkamp, informed Mr. Honerkamp about Dr. Farmer sexually harassing Mrs. Honerkamp.

67.     Mrs. Honerkamp's fear of her husband becoming aware of Dr. Farmer's actions was now a reality.

68.     Dr. Farmer's repeated offensive conduct created such a hostile work environment for Mrs. Honerkamp that her anxiety, depression, and stress reached levels that caused her to seek professional counseling.

69.     On or about January 2020, Mrs. Honerkamp's medical professional counseling her for the anxiety, depression, and stress caused directly by Dr. Farmer, prescribed her medication known as Sertraline.

70.     After Mrs. Honerkamp's husband became aware of Dr. Farmer's actions, her anxiety, depression, and stress increased dramatically.

71.     On or about February 2020, Mrs. Honerkamp's same doctor prescribed her additional medication, known as Escitalopram.

72.     Mrs. Honerkamp was affected physically due to her anxiety causing sleepless nights and being physically drained.

73.     By the end of February 2020, Mrs. Honerkamp was experiencing daily bouts of depression, anxiety, sadness, and fear.

74.     On or about March 3, 2020, Mr. Honerkamp and Mrs. Honerkamp reported Dr. Farmer's offensive behavior to their respective immediate supervisors.

75.     On or about March 26, 2020, Karie Torrence, Sr. Teammate Relations Advisor,

issued an e-mail and letter to both Mrs. Honerkamp and Mr. Honerkamp acknowledging the reporting of Dr. Farmer's offensive conduct, and stated that "We have investigated this incident and taken appropriate action designed to correct the behavior in alignment with our Atrium Health policies."

76. Mrs. Honerkamp was told by Atrium, while being fully aware of Dr. Farmer's repeated sexual misconduct and offensive behavior, that it could not discipline Dr. Farmer because he was not an Atrium employee.

77. Based on Atrium's statement, Mr. Honerkamp contacted Dianne Graves at Atrium.

78. On or about March 27, 2020, or immediately after receiving Atrium's investigation letter, Dr. Farmer was still reporting to work as normal and Atrium appeared to have taken no appropriate disciplinary action against Dr. Farmer.

79. On or about March 27, 2020, or immediately after Atrium's investigation, Dr. Farmer, while in the recovery room among patients and staff, was witnessed by Nurse Amanda Keen, Casey Claypool, and others appearing to be very agitated and using foul, vulgar language when he demanded, "Who turned me in?"

80. When Mrs. Honerkamp returned to work, several concerned co-workers that also witnessed Dr. Farmer's rage and asking who turned him in and knew of Dr. Farmer's offensive conduct to Mrs. Honerkamp, informed Mrs. Honerkamp out of concern for her safety the comments made by Dr. Farmer.

81. On or about April, 2020, Mrs. Honerkamp filed an official complaint with the EEOC after receiving no adequate response from Atrium or NAPS regarding Dr. Farmer's behavior.

82. On or about June 8, 2020, upon contact by the EEOC regarding Mrs. Honerkamp's

claims, Linda Fanning, (hereinafter "Fanning"), via Company e-mail, issued a "gag" order requesting employees involved in Atrium Health's workplace investigation to not discuss with their co-workers the ongoing investigation.

83.     Fanning made these requests pursuant to an e-mail transmitted with each recipient's name identified in a list bearing the signature block of "Linda Fanning, Senior Paralegal, Atrium Health, Office of the General Counsel.

84.     The e-mail was marked "Please treat this as Confidential" and sent with "High importance."

85.     The widely-disseminated e-mail publicly identified the Charging Party, and stated, "As you may be aware, allegations have been raised by Jacqueline Honerkamp against Atrium Health regarding her employment."

86.     Recipients were notified as being, "identified as an individual who may be in possession of such materials."

87.     The email further states, "This is a confidential matter and should not be discussed with anyone, including others listed on this message. In the middle of the body of the e-mail, recipients were instructed to "Please open the link below and sign the attestation," followed by a hyperlinked document to be signed by each recipient.

88.     As of the date of this filing, Dr. Farmer's agitation of the staff continues as he flaunts and inappropriately conducts himself with a member of the PACU staff that he is currently having a romantic relationship with.

89.     Multiple PACU staff have reported the inappropriate touching and flirting between Dr. Farmer and the nurse demonstrated, not only in the work areas, but in front of patients in the PACU.

Page | 11

90. There has, as of the date of this filing, been no appropriate corrective or disciplinary action taken by NAPS or Atrium regarding Dr. Farmer's inappropriate behavior.

91. As a proximate result of the actions of Defendants as set forth herein, Mrs. Honerkamp was shunned by many co-workers, suffered humiliation, emotional distress, and loss of enjoyment of life.

### FIRST CLAIM FOR RELIEF:
### SEXUAL HARASSMENT AND SEX DISCRIMINATION/
### HOSTILE WORK ENVIRONMENT
### (All Defendants)

92. The allegations contained in the preceding paragraphs above are realleged and incorporated herein by reference.

93. The actions of Defendants, as set forth herein, constitute harassment and discrimination against Plaintiff on the basis of her gender.

94. Dr. Farmer made unwelcome sexual advances toward Plaintiff and abused his position of authority as a management employee of Defendants.

95. At all times relevant to this action, Dr. Farmer was in a supervisory role over Plaintiff.

96. Dr. Farmer made sexual advances toward Plaintiff, and despite Plaintiff not acceding to his offensive conduct, Dr. Farmer continued to make sexual comments and physically touch her in an unwelcome manner.

97. Defendant NAPS is liable for Dr. Farmer's conduct because it was aware of Dr. Farmer's behavior toward numerous surgical staff, is the direct employers of Dr. Farmer as a medical provider and representative of NAPS as a contract service supplier to Atrium Health.

98. Defendant Atrium is liable for Dr. Farmer's conduct because it was aware of Dr. Farmer's behavior toward numerous surgical staff over an extended period of time, and did not

Page | 12

apply the policies and procedures of Atrium toward NAPS and its employees, putting Atrium employees at risk.

99.     In the alternative, Dr. Farmer's sexual harassment of Plaintiff created a hostile work environment on the basis of her gender.

100.    Dr. Farmer's sexual harassment of Plaintiff was severe and pervasive.

101.    Dr. Farmer's conduct had the effect of unreasonably interfering with Plaintiff's work performance.

102.    Dr. Farmer's conduct constituted a continuing violation of Plaintiff's right to be free from a work environment hostile to women.

103.    Plaintiff was denied a safe workplace, free from sexual harassment, in violation of applicable federal law.

104.    Defendants Atrium and NAPS were on notice of Dr. Farmer's illegal, discriminatory conduct because of his supervisory position and prior complaints of his conduct with the female surgical staff.

105.    Moreover, top level managers of Atrium and NAPS, either knew or reasonably should have known of Dr. Farmer's propensity to engage in acts of sexual harassment and specifically of his sexual harassment of Plaintiff.

106.    Defendants failed to stop Dr. Farmer's sexual harassment of Plaintiff or to discipline Dr. Farmer for his illegal conduct.

107.    Defendant Employers had a completely ineffective sexual harassment policy.

108.    Because of these ineffective policies, Dr. Farmer reasonably believed that he would not be punished for his unwelcome sexual advances toward Plaintiff.

109.    Because of these ineffective policies, Plaintiff reasonably believed nothing would

Page | 13

be done to correct Dr. Farmer's conduct if she did complain.

110.    The acts or omissions of Defendants as set forth herein constitute sex discrimination and sexual harassment in violation of Plaintiff's rights secured by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, et seq. (Title VII).

111.    The acts or omissions of Defendants constitute unlawful, intentional discrimination within the meaning of the Civil Rights Act of 1991, 42 U.S.C. §1981A(a)(1).

112.    Defendants engaged in discriminatory practices against Plaintiff with either malice or with reckless indifference to the federally protected rights of Plaintiff to be free from sexual discrimination and sexual harassment in the workplace, as set forth in 42 U.S.C. §1981A(b)(1).

113.    Plaintiff has suffered compensatory damages in an amount exceeding \$25,000 as a proximate result of the conduct of Defendants as alleged herein.

### SECOND CLAIM FOR RELIEF:
### ASSAULT AND BATTERY
(All Defendants)

114.    The allegations contained in the preceding paragraphs above are realleged and incorporated herein by reference.

115.    Dr. Farmer assaulted Plaintiff by touching her, placing her in fear of unwelcome touching.

116.    Dr. Farmer assaulted and battered Plaintiff on numerous occasions by approaching her and doing the following:

   a.  By rubbing her back and shoulders;

   b.  By placing his hand in her hair and stroking her hair; and

   c.  Forcefully jerking her pony-tail.

117.    This touching of Plaintiff was without her consent in any manner.

Page | 14

118.   In his assault and battery of Plaintiff, Dr. Farmer acted on behalf of Defendant Atrium and NAPS.

119.   In the alternative, Atrium and NAPS condoned and thereby ratified the assault and battery of Plaintiff.

120.   As a result of the assault and battery by Dr. Farmer upon Plaintiff, Plaintiff was insulted, humiliated, and emotionally distressed.

121.   Plaintiff is entitled to compensatory damages in an amount exceeding $25,000 as a proximate result of the assault and battery she suffered.

122.   The assault and battery of Plaintiff was malicious and/or willful and wanton justifying an award of punitive damages against Defendants.

123.   Managers of Defendant Employers either participated in or condoned the malicious and/or willful and wanton conduct, thereby justifying punitive damages against Atrium and NAPS, as set forth in N. C. G. S. §1D-15.

124.   Plaintiff is entitled to punitive damages from each of the Defendants for assault and battery in an amount greater than $25,000.

### THIRD CLAIM FOR RELIEF:
### NEGLIGENT SUPERVISION AND RETENTION
(Atrium and NAPS)

125.   The allegations contained in the preceding paragraphs above are realleged and incorporated herein by reference.

126.   Defendant Employers owed Plaintiff a duty of care to maintain a safe and secure work environment, free from sexual discrimination, sexual harassment, misconduct, assault and battery, and intimidation.

127.   Defendant Employers, through its agents, owed Plaintiff a duty of care to restrain

Page | 15

Dr. Farmer from the continued harassment of Plaintiff, to investigate the harassment as it became known to management employees, and to take appropriate action in to deter Dr. Farmer from continuing in his sexual misconduct.

128.    Defendant Employers were negligent in one or more of the following respects:

a.    By continuing to employ Dr. Farmer as a supervisor and manager over female employees, when they knew or reasonably should have known that Dr. Farmer would abuse his position of authority, make unwelcome sexual advances toward his female reports, and retaliating against female reports if they refused his advances;

b.    By failing to adequately supervise Dr. Farmer and to stop his sexual harassment of female employees, including Plaintiff;

c.    By failing to implement and enforce an effective sexual harassment policy;

d.    By failing to train supervisors and management employees that unwelcome sexual advances and sexual harassment would not be tolerated in the workplace;

e.    By failing to control and eliminate the atmosphere of sexual harassment in the PACU and instead tolerating an atmosphere that was hostile to women, including unwelcome sexual advances by supervisory employees; and

f.    By failing to halt the demeaning, abusive behavior by Dr. Farmer, but rather tolerating such behavior as acceptable.

129.    The negligence of Defendant Employers proximately caused Plaintiff emotional distress and mental suffering.

130.    Plaintiff is entitled to compensatory damages in an amount exceeding $25,000 as a proximate result of Defendant Employers' negligence.

131.    Defendant Employers' negligence was malicious and/or willful and wanton, thus

justifying an award of punitive damages.

132.     Plaintiff is entitled to punitive damages from Defendant Employers for negligent supervision and retention in an amount greater than $25,000.

### FOURTH CLAIM FOR RELIEF:
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (All Defendants)

133.     The allegations contained in the preceding paragraphs above are realleged and incorporated herein by reference.

134.     Dr. Farmer intentionally or recklessly engaged in extreme and outrageous conduct by engaging in the acts complained of herein that exceed all bounds usually tolerated by a decent society.

135.     Dr. Farmer desired to inflict severe emotional distress on Mrs. Honerkamp, or knew that such distress would be certain or substantially certain to result from his conduct, or was recklessly indifferent to the likelihood that his conduct would cause severe emotional distress.

136.     That Dr. Farmer's actions, did, in fact, cause Mrs. Honerkamp to suffer severe emotional distress which manifested itself in a severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so, including numerous adverse physical, emotional, and psychological symptoms, all to the damage and detriment of Mrs. Honerkamp.

137.     That Dr. Farmer's intentional infliction of emotional distress upon Mrs. Honerkamp proximately caused her to suffer injury and damage.

138.     That as a direct and proximate result of Dr. Farmer's intentional infliction of emotional distress, Mrs. Honerkamp has suffered damages exceeding Twenty-Five Thousand Dollars ($25,000.00).

Page | 17

## FIFTH CLAIM FOR RELIEF:
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (All Defendants)

139.    The allegations contained in the preceding paragraphs above are realleged and incorporated herein by reference.

140.    That alternatively, as a result of the negligence of Dr. Farmer, Mrs. Honerkamp was caused to suffer severe, emotional distress that manifested itself in a severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so, including numerous adverse physical, emotional, and psychological symptoms, all to the damages and detriment of Mrs. Honerkamp.

141.    That Dr. Farmer's actions or omissions did, in fact, cause Mrs. Honerkamp to suffer severe emotional distress.

142.    That Dr. Farmer's negligent infliction of emotional distress upon Mrs. Honerkamp proximately caused her to be injured and damaged.

143.    That as a direct and proximate result of Dr. Farmer's negligent infliction of emotional distress, Mrs. Honerkamp has suffered damages exceeding Twenty-Five Thousand Dollars ($25,000.00).

## SIXTH CAUSE OF ACTION:
## PUNITIVE DAMAGES
### (All Defendants)

144.    The allegations contained in the preceding paragraphs above are realleged and incorporated herein by reference.

Page | 18

145.    That on one or more of the above-described negligent and/or intentional acts or omissions for which Defendants are responsible and that such acts complained of herein were gross, willful, or wanton and evidenced a reckless disregard of Mrs. Honerkamp, and Mrs. Honerkamp is therefore entitled to recover punitive damages from Defendants in an amount to be determined by a jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests the following relief:

1.    That all issues of fact raised by this pleading be tried by a jury.

2.    That the Court declare that the acts and practices complained of herein are in violation of Title VII of the 1964 Civil Rights Act and North Carolina law.

3.    That Plaintiff have and recover of Defendants for sexual harassment and sexual discrimination in violation of Title VII of the 1964 Civil Rights Act, compensatory damages in an amount exceeding $25,000 and punitive damages in an amount exceeding $25,000.

4.    That Plaintiff have and recover of Defendants for sexual harassment and sexual discrimination in violation of the Civil Rights Act of 1991, 42 U.S.C. §1981A(a)(1), compensatory damages in an amount exceeding $25,000 and punitive damages in an amount exceeding $25,000.

5.    That Plaintiff have and recover of Defendants, jointly and severally, for assault and battery, compensatory damages in an amount exceeding $25,000.

6.    That Plaintiff have and recover of Defendants punitive damages for assault and battery in an amount exceeding $25,000.

7.    That Plaintiff have and recover of Defendants compensatory damages for Negligent Supervision and in an amount exceeding $25,000.

8.     That Plaintiff have and recover of Defendants punitive damages for Negligent Supervision and in an amount exceeding $25,000.

9.     That Plaintiff have and recover of Defendants damages for Intentional Infliction of Emotional Distress in an amount exceeding $25,000.

10.     That Plaintiff have and recover of Defendants for grossly Negligent Infliction of Emotional Distress damages in an amount exceeding $25,000.

11.     That the Court award Plaintiff reasonable attorney's fees as provided by §706(k) of Title VII, 42 U.S.C. §2000e(6)(k).

12.     That the Court direct Defendants to pay Plaintiff such interest as may be allowed by law.

13.     That the costs of this action be taxed against Defendants.

14.     That the Court order such other and further relief as may be just, proper, and necessary to afford complete relief to Plaintiff.

This the 12th day of February, 2021.

J. Edgar Halstead, III, N.C. Bar No.: 53763
The Law Offices of
J. Edgar Halstead, III, PLLC
200 South Old Statesville Road, Suite 103
Huntersville, NC 28078
Phone: (704) 464-1088
Fax:     (980) 225-0218
jhalstead@ncarolinalaw.com
*Attorney for the Plaintiff*

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 430-2020-01839 |

|  |  |
|---|---|
| null | and EEOC |
| State or local Agency, if any | |

| Name (indicate Mr., Ms., Mrs.) | Home Phone | Year of Birth |
|---|---|---|
| MRS. JACQUELINE N HONERKAMP | (704) 905-4361 | |

| Street Address | City, State and ZIP Code |
|---|---|
| 2550 SHALLOW CREEK TRL,  MT PLEASANT, NC 28124 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others.   (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| ATRIUM HEALTH CABARRUS | 501+ | (704) 403-3000 |

| Street Address | City, State and ZIP Code |
|---|---|
| 920 CHURCH STREET NORTH,  CONCORD,  NC 28025 | |

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE     ☐ COLOR     ☒ SEX     ☐ RELIGION     ☐ NATIONAL ORIGIN

☒ RETALIATION     ☐ AGE     ☐ DISABILITY     ☐ GENETIC INFORMATION

☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest 07-01-2019        Latest 05-21-2020

☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I.      In January 2006, I was hired by the above employer as a Certified Nursing Assistant and later became a Registered Nurse.

II.      Beginning in July 2019 and continuing, I was subjected to unwelcome comments and actions by a coworker, Dr. Farmer based on my sex.  Several times, I informed Dr. Farmer that I am a happily married woman and please do not touch me or say anything to me.  His actions continued.

III.      On March 11, 2020, I reported the sexual harassment to Human Resources, Katie Torrence. They investigated and informed me that Dr. Farmer has been counseled on Atriums policies and procedures to correct his behavior.  I informed Human Resources I am fearful of Dr. Farmer and dont feel safe and asked what I should do?  Ms. Torrence responded that I can take leave.

IV.      I believe that I have been discriminated against base on my Sex (female) subjected to retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| Digitally signed by Jacqueline Honerkamp on 05-26-2020 05:47 PM EDT | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year) |

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION **EXHIBIT A**

## DISMISSAL AND NOTICE OF RIGHTS

| To | Jacqueline N. Honerkamp<br>2550 Shallow Creek Trl<br>Mt Pleasant, NC 28124 | From: | Charlotte District Office<br>129 W. Trade Street<br>Suite 400<br>Charlotte, NC 28202 |
|---|---|---|---|

| | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) | |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 430-2020-01839 | Rosemary Caddle,<br>Senior Investigator | (980) 296-1304 |

THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

NOV 1 6 2020

Thomas M. Colclough,
District Director

(Date Mailed)

Enclosures(s)

cc | ATRIUM HEALTH
c/o Elizabeth Pratt, Esq.
Littler Mendelson
Bank of America Corporate Center
100 N. Tryon Street, Suite 1450
Charlotte, NC 28202

**Charging Party Representative**
Law Offices of J. Edgar Halstead, III, PLLC
J. Edgar Halstead, III, Esq.
200 South Old Statesville Road, Suite 103
Huntersville, NC 28078