```
          IN THE UNITED STATES DISTRICT COURT
       FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
```

| | |
|---|---|
| JACQUELINE HONERKAMP, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:21cv218 |
| ) | |
| THE CHARLOTTE-MECKLENBURG ) | |
| HOSPITAL AUTHORITY d/b/a ) | |
| ATRIUM HEALTH, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, Chief District Judge.

Plaintiff Jacqueline Honerkamp ("Honerkamp") claims that Defendant Dr. Justin Farmer ("Farmer") harassed her while both were employed in the same medical office. Defendants Farmer, Northeast Anesthesia Pain Specialists, P.A. ("NAPS"), and The Charlotte-Mecklenburg Hospital Authority d/b/a Atrium Health ("Atrium") each move to dismiss the complaint. (Docs. 9, 11, 17.) For the reasons set forth below, the motions will be granted in part, and because all federal claims will be dismissed, the action will be remanded to state court.

I. BACKGROUND

The allegations in the complaint, taken in the light most favorable to Honerkamp as the non-moving party, show the following:

Atrium and NAPS are health care providers located in North Carolina. (Doc. 6 ¶¶ 9-13.) NAPS is contracted by Atrium to

provide physicians for Atrium.  (Id. ¶ 13.)  Honerkamp has been employed by Atrium since 2006 in the Post-Anesthesia Care Unit ("PACU"), first as a certified nursing assistant and later as a registered nurse.  (Id. ¶¶ 21-22.)  Farmer is a medical provider who has been employed by Atrium and NAPS as an anesthesiologist since 2014.  (Id. ¶¶ 14-16, 24.)

According to Honerkamp, Farmer has a "reputation and history of inappropriate relationships and offensive conduct involving the nursing staff at Atrium," which has led to at least one PACU nurse's termination.  (Id. ¶¶ 28-29.)  Honerkamp alleges that both Atrium and NAPS were aware of Farmer's behavior and that the nurse's firing "with no obvious disciplinary actions against Dr. Farmer" put the nursing staff in fear of losing their jobs if they reported Farmer's behavior.  (Id. ¶¶ 30, 33.)

In July 2019, Honerkamp alleges, Farmer "targeted his offensive conduct" toward her by "touching and rubbing her back, and attempting to massage her shoulders, placing his hands on both sides of her neck."  (Id. ¶ 37.)  Honerkamp immediately told Farmer, "Do not ever touch me again."  (Id. ¶ 38.)  Dr. William Goglin, the chief anesthesiologist and chief executive officer of NAPS, witnessed Farmer's actions.  (Id. ¶ 39.)  After "several instances of harassment" by Farmer, Honerkamp "took her complaints directly" to Goglin, since Goglin is a senior member of NAPS and is Farmer's superior.  (Id. ¶ 40.)  According to Honerkamp, no

2

corrective or disciplinary action was taken against Farmer.  (Id. ¶ 41.)

In August 2019, Farmer passed Honerkamp in the hallway at Atrium and "forcefully jerked" her ponytail, causing her to suffer neck pain for several days.  (Id. ¶ 42.)  A PACU nurse witnessed this occurrence, and again Honerkamp told Farmer that his conduct was unwelcome and offensive.  (Id. ¶¶ 42-43.)

In September 2019, Farmer "purposefully cornered" Honerkamp in the Atrium breakroom and asked her, "Why won't you let me hug or touch you?"  (Id. ¶ 50.)  Again, Honerkamp told Farmer his actions were unwelcome.  (Id. ¶ 51.)

Also in September 2019, Farmer once more "forcefully jerked" Honerkamp's ponytail, which was witnessed by two co-workers, including Dr. Ho, an anesthesiologist and senior-most partner at NAPS.[1]  (Id. ¶¶ 52-53.)

In November 2019, Farmer again confronted Honerkamp, asking, "How am I supposed to pull your ponytail if your hair is down?" (Id. ¶ 56.)

In addition to these specific instances, Honerkamp alleges that at some point Farmer made "unwelcome sexual advances" towards her, which she rejected, and that during this time he also made "many sexual-innuendo comments" and "repeatedly made offensive

---

[1] No first name is given for Dr. Ho.

comments" to her.[2] (Id. ¶¶ 34-36, 45, 55.)

At some point, Honerkamp spoke with several co-workers about the alleged harassment, including with Dr. Shin Kwak, an anesthesiologist and partner at NAPS, who "admitted that Dr. Farmer had personally violated her as well with his offensive conduct." (Id. ¶¶ 59-63.) In February 2020, an altercation occurred in the surgeon's lounge at Atrium when Kwak's husband confronted Farmer about Farmer's "aggressive behavior and offensive comments" towards Kwak. (Id. ¶¶ 64-65.) In January and February 2020, Honerkamp was diagnosed with anxiety, depression, and stress stemming from Farmer's behavior and was prescribed medications. (Id. ¶¶ 69, 71.)

On March 3, 2020, Honerkamp and her husband, who is also a nurse at Atrium, reported Farmer's actions to their respective immediate supervisors. (Id. ¶ 74.) On March 26, Karie Torrence, a senior teammate relations advisor with Atrium, emailed the Honerkamps, acknowledged their report, stated that "[w]e have investigated this incident and taken appropriate action designed to correct the behavior in alignment with our Atrium Health policies," and said that Atrium could not discipline Farmer because he was not an Atrium employee. (Id. ¶¶ 75-76.) As a result of

---

[2] Honerkamp does not specify when these "unwelcome sexual advances," "sexual-innuendo comments," or "offensive comments" occurred or provide further details, and it is unclear if they are related to the five specific incidents of alleged harassment she mentions in her complaint or are separate occurrences.

4

perceived inaction on the part of Atrium and NAPS regarding Farmer's behavior, in April 2020, Honerkamp filed a complaint with the U.S. Equal Employment Opportunity Commission ("EEOC"). (Id. ¶ 81.) She received a right to sue letter from the EEOC in November 2020. (Id., Ex. A.)

In February 2021, Honerkamp filed a complaint in the General Court of Justice, Superior Court Division for Cabarrus County, North Carolina. (Doc. 6.) In it, she alleges "sexual harassment and sex discrimination/hostile work environment" as to all Defendants, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Civil Rights Act of 1991, 42 U.S.C. § 1981a (Count I); assault and battery as to all Defendants (Count II); negligent supervision and retention as to NAPS and Atrium (Count III); intentional infliction of emotional distress ("IIED") as to all Defendants (Count IV); negligent infliction of emotional distress ("NIED") as to all Defendants (Count V); and punitive damages as to all Defendants (Count VI).

In March 2021, Atrium, with consent of the other Defendants, removed the action to this court, invoking this court's federal question jurisdiction. (Doc. 1.) The present motions to dismiss followed and are now fully briefed and ready for decision.

## II. ANALYSIS

### A. Legal Standard

Each Defendant moves to dismiss the complaint pursuant to

5

Federal Rule of Civil Procedure 12(b)(6).  A motion to dismiss under Rule 12(b)(6) is meant to "test[] the sufficiency of a complaint" and not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992).  To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Plaintiff's reliance on a North Carolina standard (Doc. 23 at 2) is erroneous in this federal court action, especially since the Supreme Court has clearly rejected it.  See Twombly, 550 U.S. at 562-63 (rejecting the "no set of facts" standard); see also Ferdinand-Davenport v. Children's Guild, 742 F. Supp. 2d 772, 779 n. 4 (D. Md. 2010) (citing Twombly to reject language suggesting a motion to dismiss should be granted only if "it is certain that no relief could be granted under any set of facts provable by the plaintiff").

In considering a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam), and all reasonable inferences must be drawn in the non-moving party's favor, Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997).  "Rule 12(b)(6) protects against meritless litigation by requiring

6

sufficient factual allegations to raise a right to relief above the speculative level so as to nudge the claims across the line from conceivable to plausible." Sauers v. Winston-Salem/Forsyth Cty. Bd. of Educ., 179 F. Supp. 3d 544, 550 (M.D.N.C. 2016) (alterations and quotations omitted). Although an employment discrimination plaintiff need not plead a prima facie case of discrimination to survive a motion to dismiss, McCleary–Evans v. Md. Dep't of Transp., State Highway Admin., 780 F.3d 582, 584 (4th Cir. 2015) (citing Swierkiewicz v. Sorema N. A., 534 U.S. 506, 515 (2002)), "the complaint must 'state[] a plausible claim for relief' that permit[s] the court to infer more than the mere possibility of misconduct based upon 'its judicial experience and common sense.'" Coleman v. Md. Ct. App., 626 F.3d 187, 190 (4th Cir. 2010) (alterations in original) (quoting Iqbal, 556 U.S. at 679). Thus, mere legal conclusions are not accepted as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

With this standard in mind, the court turns to the present motions.

### B. Title VII

Honerkamp first alleges sexual harassment in violation of Title VII, 42 U.S.C. § 2000e et seq. (Doc. 6 ¶ 110.) She brings

7

this claim as to all Defendants.³

Both Farmer and NAPS move to dismiss. (Docs. 10 at 5-6; 12 at 7-9.) In her response briefs, Honerkamp states she "does not oppose [the] Motion to Dismiss the Title VII claim" as to either party. (Docs. 23 at 3; 24 at 3.) Accordingly, those claims will be dismissed. See Crowe v. Ethicon, Inc., No. 1:20-CV-97, 2020 WL 4923958, at *2 (W.D.N.C. Aug. 21, 2020).

Atrium also moves to dismiss, arguing that Honerkamp fails to show that Farmer's conduct was "sufficiently severe to alter [Honerkamp]'s conditions of employment" and that his conduct is not imputable to Atrium. (Doc. 18 at 5.)

The elements of a Title VII claim for hostile environment sexual harassment are "(1) unwelcome conduct; (2) that is based on plaintiff's sex; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment, and to create an abusive work environment; and (4) which is imputable to the employer." Murray v. City of Winston-Salem, N.C., 203 F. Supp. 2d 493, 498 (M.D.N.C. 2002) (citing Conner v. Schrader-Bridgeport Int'l, Inc., 227 F.3d 179, 192 (4th Cir. 2000)). "[S]imple

---

³ Honerkamp's Title VII claim also includes a passing reference to sex discrimination. (Doc. 6 ¶ 110.) A Title VII discrimination claim consists of "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." Coleman v. Maryland Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010). Plaintiff does not plead any facts to support several of the elements of this claim so as to make it plausible, and she does not contend in her briefs that she ever intended to make such a claim.

8

teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 270-71 (2001) (citation omitted). "Sexual harassment is imputable to an employer when the employer knew or should have known about the harassment and failed to take effective action to stop it." Foster v. Univ. of Maryland-Eastern Shore, 787 F.3d 243, 255 (4th Cir. 2015) (quotations omitted).

Here, Honerkamp's claim falls short on the third and fourth elements of a Title VII sexual harassment claim. Honerkamp alleges that Farmer twice pulled her ponytail (Doc. 6 ¶¶ 42, 52), once touched her shoulders and neck (id. ¶ 37), made unspecified "unwelcome sexual advances" (id. ¶ 34), and asked "[w]hy won't you let me hug or touch you?" (id. ¶ 50). Similar conduct in this district has been found insufficiently severe or pervasive to constitute a hostile work environment. See Murray, 203 F. Supp. 2d at 498-99 (supervisor commenting on how plaintiff looked in jeans, touching her thigh twice, staring as she walked by, and putting an arm around her did not constitute conduct rising "to the level of an objectively hostile work environment"); Adefila v. Select Specialty Hosp., 28 F. Supp. 3d 517, 525 (M.D.N.C. 2014) (supervisor slapping plaintiff's hands, yelling at her on multiple occasions, and making unkind remarks about her heritage do not rise to the level of a hostile work environment based on national

9

origin); Castonguay v. Long Term Care Mgmt. Servs., LLC, No. 1:11CV682, 2014 WL 1757308, at *11 (M.D.N.C. April 30, 2014) (comments about plaintiff's buttocks, suggestive remarks regarding sexual positions, and multiple touchings of plaintiff's buttocks did not satisfy the "severe or pervasive" inquiry, especially without showing that plaintiff was unable to perform his job duties because of the harassment).

Honerkamp's claim also fails to meet the fourth element of a Title VII claim for sexual harassment, the employer's failure to take effective action to stop the harassment. According to the complaint itself, Atrium was first made aware of Farmer's alleged offensive conduct on March 3, 2020, when Honerkamp and her husband reported it to their supervisors. (Doc. 6 ¶ 74.) That same month, on March 26, Atrium informed Honerkamp that it had taken corrective action, after which Honerkamp alleges no further misconduct by Farmer. (Id. ¶ 75.) Nor did Honerkamp allege any instance of harassment in the interim between her notice to Atrium and Atrium's responsive action. Therefore, as Farmer's alleged misconduct appears to have ceased once Atrium was aware of his conduct and took corrective action, there is no indication that Atrium failed to take prompt and effective action. The court will therefore dismiss Honerkamp's Title VII claim as to Atrium.

10

C.  Section 1981a

Honerkamp next alleges unlawful discrimination under the Civil Rights Act of 1991, 42 U.S.C. § 1981a. (Doc. 6 ¶¶ 111-112.) She emphasizes in her response briefs that she brings this claim under § 1981a, as opposed to 42 U.S.C. § 1981. (See, e.g., Doc. 24 at 3.)

Section 1981a is a remedies provision for Title VII cases. See 42 U.S.C. § 1981a. Courts generally hold that § 1981a does not create a standalone cause of action. See, e.g., Huckabay v. Moore, 142 F.3d 233, 241 (5th Cir. 1998) ("Section § 1981a does not create a new substantive right or cause of action. Rather, the plain language of the statute shows that it merely provides an additional remedy for 'unlawful intentional discrimination . . . prohibited under [Title VII].'"); Pollard v. Wawa Food Mkt., 366 F. Supp. 2d 247, 251 (E.D. Pa. 2005) ("[T]he great weight of authority holds that § 1981a does not create an independent cause of action, but only serves to expand the field of remedies for plaintiffs in Title VII suits.") (citing cases).

Because the court is dismissing Honerkamp's Title VII claim as to all Defendants, there is no underlying Title VII claim to support the § 1981a damages provision. Accordingly, the court will also dismiss her § 1981a claim as to all Defendants.

D.  Remand

Defendants removed this action to this court based on the

11

presence of a federal question. (See Doc. 1 ¶ 2 ("This Court has subject matter jurisdiction in this case based upon federal question jurisdiction.").) As a result of this court's rulings, all federal law claims are being dismissed, leaving only claims arising under North Carolina law. However, the court lacks original jurisdiction over these claims. First, as state law claims independent of federal law, the court cannot exercise federal question jurisdiction over these claims. See 28 U.S.C. § 1331 (2020). Second, the complaint alleges (Doc. 6 ¶¶ 8-15), and Defendants do not dispute, that all parties are citizens of North Carolina, so the court lacks diversity of citizenship jurisdiction as well. See id. § 1332 (2020).

Federal courts "enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995); see also 28 U.S.C. § 1367(c) (2020) (explaining that a "court[] may decline to exercise supplemental jurisdiction over a claim . . . [when it] has dismissed all claims over which it has original jurisdiction"). Relevant considerations in deciding whether to exercise supplemental jurisdiction include "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." Shanaghan, 58 F.3d at 110. Generally, these factors weigh in favor of declining jurisdiction

12

"when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988); see also id. at 350 n.7 ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered . . . — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims.").

Here, in its discretion the court will decline to exercise jurisdiction over the remaining state law claims. These claims involve routine questions of North Carolina tort law, such as assault and battery as well as alleged emotional distress, that the North Carolina courts are best suited to address. Further, there remains a possible issue of punitive damages, which involves an interpretation of the North Carolina damages statute. Given the early stage of litigation -- the motion to dismiss stage, before discovery has commenced -- and the dismissal of all of Honerkamp's federal claims, the "better path" is to remand her case to state court. See Waybright v. Frederick Cty., MD, 528 F.3d 199, 209 (4th Cir. 2008).

## III. CONCLUSION

For the reasons stated,

IT IS THEREFORE ORDERED that the pending motions are GRANTED IN PART as follows:

1.  Defendant Dr. Justin Farmer's motion to dismiss (Doc. 9) is GRANTED as to Count I, which is DISMISSED WITH PREJUDICE.

2.  Defendant Northeast Anesthesia Pain Specialists, P.A.'s motion to dismiss (Doc. 11) is GRANTED as to Count I, which is DISMISSED WITH PREJUDICE.

3.  Defendant The Charlotte-Mecklenburg Hospital Authority d/b/a Atrium Health's motion to dismiss (Doc. 17) is GRANTED as to Count I, which is DISMISSED WITH PREJUDICE.

4.  The case is REMANDED to the General Court of Justice, Superior Court Division for Cabarrus County, North Carolina, for further consideration of the remaining claims.

                                                  /s/  Thomas D. Schroeder
                                          United States District Judge

August 6, 2021